# GOVERNMENT EXHIBIT
# 1

1  community is Hassidic Jews, would find it difficult to observe
2  their religious strictures and be able to attend court as
3  anticipated.  So, they are asking for an adjournment next
4  Monday and Tuesday to permit the community and the defendant
5  to celebrate the holy days of Purim.
6          THE COURT:  We'll see where we are on Thursday with
7  the trial schedule.  Remind me again on Thursday.
8          MR. RHODES:  Fair enough.  Thank you, your Honor.
9          (Pause.)
10         THE COURT:  I'm going to tell the jury that I think
11 the case will take about a week.  It definitely won't take
12 more than two.
13         Does anybody think that's an inaccurate prediction?
14         MR. STUTMAN:  I didn't hear the first part.
15         THE COURT:  I intend to tell the jury that I think
16 the case will take about a week and definitely won't take more
17 than two.
18         MR. STUTMAN:  Okay.
19         MS. GOLDBARG:  We agree, your Honor.
20         MR. STUTMAN:  Your Honor, may I address the Court on
21 behalf of Mr. Weingarten?
22         THE COURT:  Yes.
23         MR. STUTMAN:  Your Honor, Mr. Weingarten vehemently
24 would like the Court to understand that he does not think that
25 counsel is prepared to go forward at this point.

1    Mr. Weingarten is so concerned that he has expressed
2  an interest, because he feels he knows the case better than
3  both attorneys, he has a desire to be allowed to examine each
4  one of the government's witnesses as they proceed.
5    THE COURT: You can represent yourself, if you want.
6  It's not a good idea, but you have the right under the Sixth
7  Amendment to represent yourself.
8    Can you hear me okay?
9    MR. WEINGARTEN: Yes.
10   MR. STUTMAN: If you want to address the Court, you
11 must stand up.
12   MR. WEINGARTEN: I'm sorry. I didn't know.
13   THE COURT: If you want to, you can sit down.
14   MR. WEINGARTEN: It's easier for me, because I'm
15 weak and it's better for me to sit, if you don't mind. Thank
16 you so much for allowing me to --
17   THE COURT: I have not allowed you yet. I have
18 allowed you to sit down, but I have not allowed you to
19 represent yourself, and before I do, I want to make sure
20 you're doing it with your eyes open, and with the knowledge
21 that, in my judgment -- and I've seen a few trials, including
22 trials where defendants represent themselves -- it's a
23 terrible idea.
24   MR. WEINGARTEN: I understand that.
25   THE COURT: You're not trained in the law. First of

1  all, let me back up.
2          Mr. Rhodes, Mr. Stutman, do you feel as though you
3  are prepared to defend this case?
4          MR. STUTMAN:  Yes, your Honor.
5          MR. RHODES:  Yes, your Honor.
6          THE COURT:  You have a right to represent yourself.
7  If you do that, you'll do everything.  You can't do it
8  piecemeal.  I'm not going to allow you to do part of the
9  lawyers' work and have them do part of it --
10         MR. WEINGARTEN:  May I?
11         THE COURT:  Just a second.  Just hear me out.  I
12 won't take long.  -- but I will allow you, if you want, to
13 make an opening statement, examine the witnesses,
14 cross-examine the government witnesses.
15         You can still testify yourself.  I'll guide you,
16 because you would be wearing -- the expression is, you're
17 wearing two hats.  One is, you're your own advocate.  The
18 other is, you're also a key witness in the case, and the
19 defendant and you have to respect the difference, but I'll
20 help you understand and respect the difference.
21         The really important point I want to make to you is,
22 there's an expression that anyone who represents himself has a
23 fool for a client.  Like a lot of cliches, there's a germ of
24 accuracy and legitimacy to it.  You are not trained in the
25 law.  You might ask a question that would bring out from a

1  witness inadmissible testimony that might damage your case,
2  because you don't understand how to pose a question. At least
3  I don't think you do. Most, for example, in your situation
4  don't. You don't know how to pose a question, so you get only
5  admissible testimony. So, you could really damage your case.
6  Second, cross-examination is an art. It's really
7  difficult. Even experienced lawyers have a difficult time
8  with it, and it's often the heart of a criminal defendant's
9  case, is to probe the details of a witness's testimony. So,
10 you're not trained in the art of cross-examination.
11 You don't have legal training. The cases I've seen
12 in which defendants have represented themselves, to a person,
13 they have all been convicted. They have all been convicted
14 like that (snapping fingers), not because they were not
15 intelligent people -- some of them weren't intelligent people,
16 some were -- just because they didn't know what they were
17 doing.
18 Also, just being the defendant, it's really helpful
19 in a case like this -- let's be honest about it, these are
20 highly charged, flammable allegations -- and in a case like
21 this, it is so much better for you for your spokesperson not
22 to be you, for your spokesperson to be lawyers. I know these
23 lawyers, Mr. Rhodes a little bit better than Mr. Stutman, but
24 they are lawyers, and they bring to the bar, when they get in
25 front of a jury, they bring, you know, forget about what

people say, the lawyer jokes and stuff, when a lawyer stands up, they bring a measure of professional credibility with them.

You want to be heard through them, not through you. It's not going to be good for you now to be your spokesperson. Trust them.

MR. WEINGARTEN: Yes, I'm sure. And I know that the Judge wants the best for me and what the judge said is from heart. I feel it, words from the heart. Factually, I believe the same thing as the Judge, everything, even before I made that application. But my problem is, let me try to explain something.

I'm not starting an argument again about what we were talking the last time and the last thing. The Judge shouldn't take it that way. And I want also to explain now that not to take me from my words, because it's not my language which I talk, and the judge shouldn't be -- you said "like that." I don't want to offend. I'm not using the proper way. I'm translating my Yiddish in English, and I try to find vocabulary, you see. When I'm explaining, I don't mean anything, and I'm sure I don't mean anything, and the Judge shouldn't take it that way if I try to go on the words, of the words, and I'll be a bit slow, because it's hard for me in English.

And let's put it clear. I'm not trying to argue and

1  I'm not going against the order of the Court or anything. I'm
2  not trying to, and it was not the thinking. That's even
3  flammable, and I wouldn't do that.
4      Let's go to the thing itself. It has nothing to do
5  with the Court. There's no question about it that what the
6  Judge said, everything I know before, and it hurts me, and
7  that's why, by the last time when I came, I said, I want to
8  drop the lawyers. Last time, I said I was trying to do it and
9  I said it can be proven from the tapes of the telephones. I
10 used all the 300 minutes, and it can be proven, and I hear
11 more than 1500 minutes, five months, and what I was saying to
12 the Judge, and is the same, no changes.
13     What happened since then? Since one lawyer came
14 down only Thursday afternoon and was with me forty minutes,
15 and the other day one hour and fifty minutes, and that's
16 Friday. Sunday they came, two people, and was a big argument,
17 nothing and nothing.
18     This case, I believe the Judge prepared himself and
19 knows the case very well. You see, I have a lot of
20 depositions and I have a lot of stuff, writings. I got new
21 stuff, which I got packages of the grand jury, of the
22 testimonies and all those things, the indictment.
23     I don't think I got everything, and I have a lot to
24 show that I didn't get. I got a lot new stuff. The old
25 things is the old deposition, which was Rockland County. I

1  got it, finally. I never had all the papers, and I still
2  don't have the papers which happened in this court, and I
3  asked to give me copies of the materials which they have in
4  their office. I never got it.
5         So, I told it to my children on the phone, and I
6  never got it.
7         The only thing why I got a deposition from Rockland,
8  it's only through the U.S. Government gave it now to me. Only
9  that things. But the petition from the wife and everything,
10 all the petitions she made in other courts, I never got it.
11 And the thing is, they never are going to be able to explain
12 the deposition and rebut them and to tell them stories what's
13 going on and what's the contradiction.
14         THE COURT: Mr. Weingarten.
15         MR. WEINGARTEN: Yes.
16         THE COURT: In a day or two, your daughter, if the
17 government's representations are accurate -- and I think they
18 are -- your daughter is going to take the witness stand and
19 say that you sexually abused her for almost a decade.
20         MR. WEINGARTEN: She says. Five years.
21         THE COURT: Do you really want to be the one to
22 cross-examine Leaih? You do?
23         MR. WEINGARTEN: I won't, actually. On the first
24 hand, I wouldn't do it. Never, never. And when she was
25 deposed in Rockland --

1  THE COURT: I'm not talking about the deposition. I
2  got a jury outside that door. I see their faces. They are
3  coming in in a few minutes. You're going to make a decision
4  now whether or not --
5  MR. WEINGARTEN: Let me explain.
6  THE COURT: I don't want you to explain. I don't
7  want to hear about the Rockland County case anymore. We're
8  trying the Brooklyn criminal case.
9  MR. WEINGARTEN: Let's go away from Rockland.
10 THE COURT: Do you want to represent yourself here?
11 MR. WEINGARTEN: I want to explain. I didn't want,
12 and that's why I wanted to get other lawyers, because I didn't
13 want. But I tried to talk to them. I gave them one or two
14 examples. She says this and this and this in the grand jury.
15 She says this and this and this. How can you rebut it? Do
16 you know the story? From where do you have proof? They
17 didn't know what to answer. I showed them here and there and
18 there, and it's there. You can't do it for the whole case in
19 one day. I feel it's impossible. That's why. That's the
20 only reason why. The best chance in my situation is, only
21 because of my situation, have no other chance, I have to do
22 it, because I still know my case better than everyone.
23 THE COURT: Okay.
24 MR. WEINGARTEN: I still know some things which she
25 said here on this, and to bring it in front, You said this,

1  here is the difference, to show where the difference is, I
2  have no choice. The best choice, that's the only reason.
3         On the other method which the Judge said, the legal
4  expense and all those things, I would, even before -- she said
5  a story of that and that time, a long story. I would go over
6  with them. I have to rebut it. But I could do it, because
7  for them, it's going to be new, and it would have, let's say,
8  ten or fifteen steps they are going to mix up. They come the
9  second step before the first step.
10        THE COURT: Mr. Weingarten, knowing that, in my
11 judgment, it's a bad idea and you're more likely to get
12 convicted, do you still want to represent yourself in this
13 trial?
14        MR. WEINGARTEN: I'm sure in that way, I lose
15 everything.
16        THE COURT: Listen to --
17        MR. WEINGARTEN: Yes. I have no choice.
18        THE COURT: You do have a choice.
19        MR. WEINGARTEN: No, because this way, they don't
20 have nothing what to say but just wrong things.
21        THE COURT: You have a choice to be represented by
22 able counsel or to represent yourself. That's your choice.
23        MR. WEINGARTEN: The part -- only the part --
24        THE COURT: Is it your choice to represent yourself?
25        MR. WEINGARTEN: Cross-examining the witnesses.

1    THE COURT: I'm not going to let you just do part of
2 it. You do all.
3    MR. WEINGARTEN: What all?
4    THE COURT: You're going to make your opening
5 statement and summation.
6    MR. WEINGARTEN: What means "summation"?
7    THE COURT: You don't know what a summation is. A
8 summation is the closing arguments. If you represent yourself
9 these lawyers will stay here, they will be what we call
10 standby counsel, they will advise you, but you will make the
11 opening statement to the jury.
12    MR. WEINGARTEN: Yes.
13    THE COURT: You will conduct all cross-examination.
14    MR. WEINGARTEN: Yes.
15    THE COURT: You will conduct all direct examination
16 if you have defense witnesses.
17    MR. WEINGARTEN: What means "direct examination"?
18    THE COURT: Stop interrupting me. At the end of the
19 case, you will make the summation, the closing argument, to
20 the jury. You have to choose to have all those things done by
21 able, prepared counsel, or to do them yourself.
22    MR. WEINGARTEN: They are not prepared. Maybe they
23 are able. They are not prepared. So then, that's why I have
24 no choice. I'm taking that choice.
25    THE COURT: Okay.

1         MR. WEINGARTEN: I'm taking that choice, but I have
2 to be able to speak to them, and also, if the judge sees that
3 I'm mistaken on something, to remind me and tell me.
4         THE COURT: All right.
5         I think under Faretta v. California, the right to
6 self-representation is clear.
7         MR. WEINGARTEN: What's California?
8         THE COURT: That's a case. You have this right to
9 -- you have this right to do this to yourself, to represent
10 yourself, and, by doing so, increase the odds of conviction
11 dramatically. It's your right. I think you're doing so
12 knowingly, having been advised of how terrible an idea it is.
13 It's still your choice.
14         MR. WEINGARTEN: Yes. I know it's terrible, just
15 like the justice, exactly.
16         THE COURT: All right.
17         MR. RHODES: Judge, all counsel advised him so
18 strongly yesterday and again this morning that this is a poor
19 idea. Could you inquire, perhaps, as to his educational
20 background, his linguistic abilities, because they may prove
21 good reasons not to grant his application?
22         THE COURT: No. I think his linguistic abilities
23 are much, much better than he lets on. He communicates
24 effectively, articulately. He's obviously an intelligent
25 person. There's no educational requirement that's a threshold

1  under Faretta for self-representation.
2          MR. WEINGARTEN: I know my family is also trying to
3  get a cross-exaninator. They are hard to get
4  cross-examination, especially on a sexual-abuse case. If they
5  are possible to do it, let's say one witness I was doing, and
6  he comes in and he could take over for the next witness and so
7  on and so on?
8          THE COURT: No. I won't allow that. If these two
9  lawyers start the trial for you, and then an additional lawyer
10 comes in to cross-examine a witness, that's fine. You will be
11 represented by counsel. But the law doesn't permit a hybrid.
12         MR. WEINGARTEN: But advice private to me on the
13 case, I could take another lawyer's understanding?
14         THE COURT: You could have another lawyer come in.
15 If Mr. Rhodes and Mr. Stutman represent you, if they start the
16 trial as your counsel, and in the meantime, you or your family
17 or your people retain another lawyer, that lawyer can join the
18 team. Another terrible idea, but it's permissible. But if
19 you start to represent yourself, I'm not going to let you,
20 mid-trial, bring in, as you say, a cross-examinator.
21         MR. WEINGARTEN: Another witness, the next witness.
22         THE COURT: You either represent yourself or you
23 don't. If you don't, your lawyers represent you and you can
24 add another lawyer to the team, if you want. There's a reason
25 not to represent yourself. If your family comes up with a

1   lawyer this week, and you want that lawyer to join the team --
2           MR. WEINGARTEN: Yes.
3           THE COURT: If your family gets a lawyer this week,
4   and you want that lawyer to join the team, I'll let that
5   lawyer join the team, but not if you represent yourself.
6           MR. RHODES: I think he is talking about Norendos,
7   who was told he could help us in our cross-examination of
8   witnesses. If Mr. Weingarten goes pro se, we could be a
9   conduit of that lawyer to Mr. Weingarten. He's not available
10  to come to the Eastern District until March 10.
11          THE COURT: That's eight days from now.
12          MR. RHODES: Yes, your Honor.
13          THE COURT: You ought to let these represent you.
14  It's in your best interest. I'm going to respect your right
15  to self-representation.
16          MR. WEINGARTEN: I understand. I understand. I'm
17  saying the same thing, and I feel very bad about the whole
18  story, that I have to do it. But I still feel I'm the best to
19  do it, when they are -- they don't know the case and they are
20  not prepared.
21          THE COURT: Okay.
22          MR. WEINGARTEN: Maybe if they would be prepared, it
23  would be different. They didn't know how to answer me. When
24  I gave them examples and I showed them how to do it, they
25  didn't have anything with what to answer.

1  THE COURT: All right. So, your decision is to
2  represent yourself?
3  MR. WEINGARTEN: My decision is, it seems it was
4  from up, from God, that I have to represent myself, because
5  otherwise, I'm stuck. I have no other choice.
6  THE COURT: All right. Bring in the jury.
7  MR. STUTMAN: Judge, can I just run to the men's
8  room very quickly? It's right over here.
9  THE COURT: Okay.
10  MR. WEINGARTEN: I also said that I need a
11  translator, and I mentioned all the time to them. They said,
12  There's no problem, you're going to get it. Mr. Stutman said,
13  We're going to get a translator. If it starts and I have to
14  talk, let's say tomorrow or something, I need a translator.
15  THE COURT: You're going to start talking today.
16  MR. WEINGARTEN: Today?
17  THE COURT: We're going to pick a jury. You're
18  going to make your opening statement.
19  MR. WEINGARTEN: Okay. I'll try. I'll try. The
20  thing is, let's put it clear that I'm not sure that I'm going
21  to use a translator constantly. If I feel I'm focusing or
22  not. And I can use the language, also, it doesn't lose on
23  what I am doing, because I try to translate in my head. Maybe
24  I'm going to use when I miss some word and I don't know the
25  word and I want to check a word or two, Give me a word. I'll