```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :   MEMORANDUM
                    -against-                               :   DECISION AND ORDER
                                                            :
                                                            :   08-cr-571 (BMC)
ISRAEL WEINGARTEN,                                          :
                                                            :
                                            Defendant.      :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Before me is defendant's motion for compassionate release, requesting that he be able to serve the remainder of his sentence under home confinement. Defendant argues that he should be released "due to the 'extraordinary and compelling reasons' confronting the federal prison system by the pandemic of COVID-19 and the fact that [he], at the advanced age of 70, suffers from a host of very serious medical issues and is not a danger to the community." The Government opposes. Defendant has not shown extraordinary circumstances sufficient to reduce his sentence. In addition, defendant has not served even half of his sentence, and his crimes were of a particularly egregious nature. The motion is therefore denied.

## BACKGROUND

In 2009, a jury convicted defendant of two counts of transporting a minor in foreign commerce for the purpose of engaging in criminal sexual activity, 18 U.S.C. § 2423(a), and three counts of traveling in foreign commerce for the purpose of engaging in sexual conduct with a minor, 18 U.S.C. § 2423(b). He was sentenced to 30 years' incarceration.

To summarize, defendant subjected his eldest daughter, "Jane Doe," to repeated sexual and physical abuse, starting when she was around nine or ten years old. Over approximately the next six years, defendant would regularly force Doe to gratify him both manually and orally;

digitally penetrate Doe's vaginal and anal cavities; and would physically beat her for "seducing" him and trying to report his conduct. During some extended spans of time, defendant abused Doe in this manner on a daily basis, with Doe testifying that, at one point, defendant "abused me night and day, every day . . . [i]t was non-stop, [I could] hardly remember getting dressed." The jury found defendant guilty on all counts of the indictment.

Defendant offered several mitigating factors during his sentencing proceeding, including that he was "a 59-year old man and in delicate physical health"; that he was suffering from "elevated uric acid levels in his body and from urinary retention, which requires self-catheterization every two and a half to three hours"; and that his medical problems placed him at "an unnecessary and unacceptably high risk" in prison. Judge Gleeson sentenced defendant to 30 years in prison.

On appeal, the Second Circuit reversed one count of conviction – Count Three, under 18 U.S.C. § 2423(b) – holding that "travel between two foreign countries, absent *any* territorial nexus to the United States, does not constitute 'travel [] in foreign commerce' for the purpose of § 2423(b)." United States v. Weingarten, 632 F.3d 60, 61-62 (2d Cir. 2011) (emphasis and alteration in the original). At resentencing, defendant again contended that his health issues and medical needs supported a lower sentence, but Judge Gleeson once more sentenced him to 30 years. Defendant unsuccessfully appealed this sentence as well and then unsuccessfully sought habeas relief both in this District and in the Second Circuit. At present, BOP expects to release defendant in 2034.

On April 14, 2020, one of defendant's other daughters filed a compassionate release application with the warden of Fort Dix; two days later, defendant himself filed an application with the warden. Defendant's counsel followed these requests up with a letter to the warden,

"again reiterating [defendant's] potentially life-saving request." According to the Government, the warden has yet to respond.

## DISCUSSION

In general, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, a convicted defendant may bring a motion to reduce the term of his imprisonment under the compassionate release statute, if, after considering the factors set forth in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i). The moving defendant bears the burden of showing that his circumstances compel his early release. See United States v. Ebbers, No. 02-cr-1144, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")).

Absent a terminal illness, the Sentencing Commission would permit compassionate release because of a defendant's medical condition if he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 Application Note 1(A). Release may also be appropriate if there exists some other "extraordinary and compelling reason" not specifically provided for in the Guidelines. Id. § 1B1.13(1)(D). Of course, any early release would be predicated on a finding that the "defendant is not a danger to the safety of any other person or to the community." Id. § 1B1.13(2).

As an initial matter, although defendant filed this motion several days short of the 30-day lapse requirement set forth in 18 U.S.C. § 3582(c)(1)(A), the necessary number of days has now passed without response from the warden.  In any event, the Government concedes that the issue is moot and that the motion is properly before the Court.

Turning to the merits of the motion, defendant argues that, "in light of the COVID-19 pandemic, if Weingarten is not released from prison now, he will certainly die in prison."  I disagree.

Defendant is 70 years old.  He suffers from kidney, bladder, and urinary conditions, as well as from an unspecified prostate disorder, pericarditis, and "heart problems."  He also has a family history of lung disease, but does not claim to have it himself.[1]  Defendant suggests that "his multiple health issues have left him severely immuno-compromised."  Indeed, his treating physician states that "should Mr. Weingarten become infected with SARS-CoV2 virus, he has between 29-44% likelihood of requiring hospitalization, between 8-19% likelihood of requiring admission to an ICU, and between 2.5-5% likelihood of succumbing to this illness, based on his age alone."

These pre-existing conditions appear to have remained relatively stable – albeit inconvenient – during defendant's incarceration.  Nor do most of his individual ailments qualify as either immunocompromising or of particular sensitivity to COVID-19.  In fact, other than his age of 70, defendant neither suffers from the diseases nor receives the types of treatments that

---

[1] Defendant also claims to have other "undiagnosed and untreated" health issues, including possible bladder or renal cancer.

4

the CDC has determined to place someone at a higher risk of severe consequences from the virus.[2]

It is true, as the Government acknowledges, that "defendant could be more vulnerable to adverse outcomes" because of his age and general health than others. But although certainly not something to take lightly, a 2.5-5% mortality probability, as opposed to less than 1% to the general population, does not strike me as extraordinary or compelling. Even though this figure only controls for defendant's age and not his current medical conditions, his absence of additional CDC-recognized vulnerabilities to COVID-19 suggests that any increased risk would be marginal.

In addition, the doctor's estimate (assuming it is accurate) only comes into play *if* defendant gets infected, which is by no means certain in light of the current health conditions at Fort Dix and the protective measures that it is taking to quell the disease's spread. Although defendant paints a grim picture of the facility, fewer than 2% (48 of 2,861) of the inmates at Fort Dix have tested positive for COVID-19, and over half (26 of 48) of them have already recovered.[3] Nor have there been any reported deaths. Moreover, any inmate who tests positive is isolated from the general inmate population. These circumstances are not sufficiently compelling or extraordinary to alter defendant's sentence.

I have also considered the factors set forth under 18 U.S.C. § 3353(a), the application of which fails to convince me that he is deserving of compassionate release. The six-year barrage of abuse to which defendant subjected his daughter represents an egregious course of conduct undeserving of leniency. It was for this reason that Judge Gleeson chose not to alter his first

---

[2] See *People Who Are at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last reviewed May 14, 2020).
[3] See *Covid-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed on May 24, 2020 at 3:23 P.M.).

sentence even after one of the counts was vacated on appeal. See United States v. Weingarten, 713 F.3d 704, 713 (2d Cir. 2013) ("[I]t is the extent and duration of the repeated rapes and brutality to which he subjected his victim on three continents over six years, not the specific number of international flights in violation of particular federal statutes, that is relevant."). Furthermore, defendant has not yet even served half of his 30-year sentence. Thus, to release him now, even to home confinement, would be inconsistent with the interests of justice.

At defendant's re-sentencing, Judge Gleeson said that he has "deliberately imposed a sentence that would give him hope of not dying in jail." I do not believe that this Order materially undermines that objective.

## CONCLUSION

Defendant's [120] motion to reduce his sentence is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       May 25, 2020